IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| MELISSA CATHERINE WILLIAMS, | : | CIVIL ACTION |
| | : | NO. 16-991 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WEXFORD HEALTH SOURCES, INC., | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        August 9, 2016


        Plaintiff Melissa Catherine Williams brings federal
and state law claims against a number of parties due to medical
treatment she received while incarcerated at a state prison.
Defendants have filed motions to dismiss. For the reasons that
follow, the Court will grant the motions and dismiss all of
Plaintiff's claims as time-barred.[1]

---

[1]     At the August 1, 2016, hearing on the motions to
dismiss, the Court stated from the bench that it intended to
grant the motions and dismiss Plaintiff's claims. This
memorandum explains in further detail the Court's rationale for
its decision, and the accompanying order serves the purpose of
actually dismissing the claims.

I.    **BACKGROUND**

The Corrected First Amended Complaint alleges the following facts:

Plaintiff Melissa Williams is a former inmate at the Pennsylvania State Correctional Institute at Muncy, Pennsylvania ("SCI-Muncy").[2] For several months in 2012 and 2013, Plaintiff was under the medical care of Defendant Dr. Gregory Famiglio ("Dr. Famiglio" or "Famiglio") – who was employed by Defendant Wexford Health Sources, Inc. ("Wexford"),[3] Corrected First Am. Compl. ¶ 5, ECF No. 17 – for interstitial pneumonitis, rheumatoid arthritis, and other medical conditions. Id. ¶ 15. In the course of that treatment, Dr. Famiglio prescribed large doses of antibiotics and other medications, even though "[t]he prescribing of antiobiotics for Rheumatoid Arthritis is contrary to standard medical practice." Id. ¶¶ 16-17. As a result, Plaintiff's lungs were damaged and she became extremely sick. Id. ¶¶ 16, 18-19. She made numerous requests for medical treatment, but her complaints were largely ignored by Dr. Famiglio, other Wexford staff members, and employees of SCI-Muncy. Id. ¶ 21. Eventually, she lapsed into a coma and was

---

[2]     Plaintiff does not state when she entered SCI-Muncy, but she left the prison on December 22, 2013. Corrected First Am. Compl. ¶ 33, ECF No. 17.

[3]     It appears from the Complaint that Wexford was contracted by the Pennsylvania Department of Corrections to provide medical services at SCI-Muncy. Id. ¶ 49.

hospitalized for at least 45 days beginning on May 18, 2013. Id.
During her hospitalization, she was informed by other doctors
that she had degenerative lung disease caused by improper doses
and types of antiobiotics, and that she would die without lung
transplants. Id. ¶¶ 22-23.

When Plaintiff was discharged from the hospital, she
returned to SCI-Muncy and was placed in the infirmary. Id. ¶ 24.
While there, she confronted Dr. Famiglio about his
prescriptions. Id. ¶ 26. In response, he yelled at Plaintiff and
said, "I don't know what antibiotic I used." Id. ¶ 27. Plaintiff
has since made numerous requests for Defendants to identify the
medications she was prescribed, but those requests have not been
fulfilled. Id. ¶ 28.

Plaintiff was paroled on December 22, 2013. Id. ¶ 33.[4]
That day, Plaintiff was driven home by Defendant Melissa
Fisher – a nurse – and Defendants Jane Doe and John Doe, all of
whom are employed by Defendant Commonwealth of Pennsylvania
("the Commonwealth"). Id. ¶ 38. During the entire trip,
Plaintiff was on life-sustaining oxygen and the Does and Fisher
knew that she needed that oxygen to sustain her life. Id. ¶¶ 39-
40. Nonetheless, they left her on her porch without access to

---

[4]    Before her release, Dr. Famiglio made a written
statement on a Pennsylvania Department of Public Welfare form
that Plaintiff was suffering from "Rheumatoid Interstitial
Pneumonitis," from which she might die. Id. ¶ 34.

oxygen equipment. Id. ¶ 41. When Plaintiff asked about the oxygen, Defendants Does and Fisher told her that it was inside her house. Id. ¶ 42. However, because Defendants had failed to inform Plaintiff's family that she was being paroled that day, no one was home when Plaintiff arrived. Id. ¶ 43. As a result, Plaintiff was stuck on the porch with no oxygen, suffering severe shortness of breath, while the Does and Fisher "laughed at her and left" her there. Id. ¶ 44. Plaintiff then had to be taken to the emergency room at a local hospital, where she stayed for a couple of days. Id. ¶ 46.

Plaintiff is currently awaiting a double lung transplant and may die while waiting. Id. ¶ 48.

Plaintiff further alleges that Defendants "have a well-documented history of covering up" their negligence and deliberate indifference, and that, while Plaintiff was in the infirmary, Defendants kept her in isolation for no medical or penological reason in order to conceal their negligence and deliberate indifference. Id. ¶¶ 29-32. Moreover, she says, Wexford has a history of "corporate negligence and fraud," "employing unqualified and uncaring doctors," and "intentionally, maliciously, recklessly, and in callously [sic] indifferently prescribing inmates improper medications causing injuries." Id. ¶¶ 49-51. Nonetheless, the Commonwealth entered into contracts with Wexford for Wexford's services at SCI-Muncy,

4

demonstrating callous indifference to Plaintiff's rights. Id. ¶¶ 49, 51.

Plaintiff filed a Writ of Summons in the Court of Common Pleas of Philadelphia County on May 22, 2015, and then a Complaint in the same court on January 27, 2016. Wexford & Famiglio Mot. Dismiss Ex. B, ECF No. 5-4. Defendants removed the Complaint to this Court on March 2, 2016. Id. Plaintiff has since filed a Corrected First Amended Civil Rights Complaint, ECF No. 17, bringing eight counts: (1) corporate negligence, against Wexford; (2) medical malpractice, against Wexford, Dr. Famiglio, Doe Defendants employed by Wexford, and other Wexford staff; (3) medical malpractice, against Defendant Diggan, a nurse at SCI-Muncy; (4) medical malpractice, against Fisher; (5) negligent infliction of emotional distress; (6) intentional infliction of emotional distress; (7) violation of the Eighth Amendment, against all medical Defendants; and (8) violation of the Americans with Disabilities Act, against all Defendants.

There are three motions to dismiss: one from Wexford and Dr. Famiglio, ECF No. 19; one from Fisher, ECF No. 20; and one from the Commonwealth, ECF No. 29. All are ripe for disposition.

## II.   LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks removed). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court

6

to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**III. DISCUSSION**

All Defendants contend that Plaintiff's claims should be dismissed because they are barred by the statute of limitations. Plaintiff concedes that all of her claims are subject to a two-year statute of limitations. Pl.'s Mem. Law Opp'n 7, ECF No. 26. The ultimate question is whether Plaintiff filed this action in time.[5]

---

[5] Ordinarily, a plaintiff "need not try to plead around defenses," such as a statute-of-limitations defense. Schmidt v. Skolas, 770 F.3d 241, 248 (3d Cir. 2014) (quoting Doe v. GTE Corp., 347 F.3d 655, 657 (7th Cir. 2003)). However, "a Rule 12(b) motion can be utilized when the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975).

In this case, the Complaint clearly states when the final factual allegations occurred, such that it is clear when, at the latest, the statute of limitations began to run. Indeed,

First, the Court must determine when the statute of limitations began to run. In Pennsylvania, as a general rule, "a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted." Wilson v. El-Daief, 964 A.2d 354, 361 (Pa. 2009). In this case, the alleged injury was inflicted when Dr. Famiglio initially prescribed improper medications to Plaintiff. However, "[i]n certain cases involving latent injury, and/or instances in which the causal connection between an injury and another's conduct is not apparent, the discovery rule may operate to toll the statute of limitations until the plaintiff discovers, or reasonably should discover, that she has been injured and that her injury has been caused by another party's conduct." Id. at 361-62.

Here, taking Plaintiff's allegations as true and drawing all reasonable inferences in her favor, there is no reason that Plaintiff could or should have discovered that her injuries were due to improper medications until after she awoke from the coma and was informed of that fact by hospital doctors. When exactly this occurred is somewhat unclear. Plaintiff was hospitalized for at least 45 days – that is, until at least July

---

there is no dispute over the relevant facts concerning the commencement of the limitations period or the commencement and service of this action; the only question is the legal significance of those facts. Thus, the Court may resolve this statute of limitations issue at the motion to dismiss stage. Plaintiff has not argued otherwise.

2, 2013 – but she does not state how long she was in a coma or on what date she learned the cause of her condition from the doctors. Accordingly, Plaintiff's cause of action may have accrued sometime between May 18, 2013, and July 2, 2013. Potentially, it accrued even later, when she confronted Dr. Famiglio about his prescriptions and learned that he did not know what he had prescribed. Certainly, at the latest – as all parties agree – Plaintiff's cause of action accrued on December 22, 2013, when Plaintiff was released from SCI-Muncy. Therefore, there is no genuine dispute of fact that, at the very latest, the statute of limitations ran on December 22, 2015.[6]

The next question is when Plaintiff filed this action. The parties agree that Plaintiff attempted to initiate her action by filing a Writ of Summons ("the Writ") in state arbitration court on May 22, 2015. They disagree, however, as to whether this filing tolled the statute of limitations. If it did not, Plaintiff's claims fail, because she did not then file and serve her Complaint until January 27, 2016, which is outside the statutory period.

_____

[6]    Some Defendants argue that the statutory period ran even earlier; Plaintiff concedes that it ran no later than December 22, 2015. Pl.'s Mem. Law Opp'n 10, ECF No. 26. Most likely, the exact date actually varies a bit by defendant – the limitations period may have run earlier for Dr. Famiglio, for example – but for the reasons discussed below, those potential distinctions are irrelevant.

Pennsylvania Rule of Civil Procedure 401(a) provides that "[o]riginal process shall be served within the Commonwealth within thirty days after the issuance of the writ or the filing of the complaint." Pa. R. Civ. P. 401(a). However, if the plaintiff fails to serve the defendants within thirty days, she may reissue the writ "at any time." Id. 401(b)(2). She may also file a writ and then later file a complaint. If so, the complaint serves as the "equivalent of a reissuance of the writ, and the plaintiff may use either the reissued writ or the reinstated complaint as alternative original process." Id. 401(b)(5).

In this case, Plaintiff filed the Writ on May 22, 2015. However, she did not serve the Writ upon Defendants at any time. Instead, on January 27, 2016 – outside the statute of limitations – she filed a new Complaint, supplanting the previous Writ. Wexford & Famiglio Mot. Dismiss Ex. B at 4, ECF No. 5-4. She then served that Complaint upon Defendants on February 12, 2016 (which was, in compliance with Rule 401(a), within thirty days of the filing of the Complaint). Id. at 4-5.

Plaintiff argues that under Rule 401, she revived her Writ by filing the Complaint, such that she tolled the statute of limitations as of the date she first filed the Complaint. In other words, Plaintiff reads Rule 401(b)(5) either to mean that a statute of limitations is retroactively tolled when an

10

unserved writ is reissued, or to mean that the filing of a writ itself, regardless of whether the writ is served, tolls the statute of limitations. This interpretation is incorrect.

If a statute of limitations could be retroactively tolled whenever a writ is finally served on a defendant, or if a statute of limitations is tolled whenever a writ is simply filed, regardless of whether it is ever served, statutes of limitations would lose virtually all meaning. Under this theory, a plaintiff could file a writ, do nothing for 20 years, then reissue the writ, serve the writ upon defendants, and proceed with her case.[7] See <u>McCreesh v. City of Philadelphia</u>, 888 A.2d

---

[7]    At one time, Pennsylvania courts recognized a more limited version of this theory: the "equivalent period" doctrine, in which a "statute of limitations is tolled once a praecipe for writ of summons or complaint is filed," then the plaintiff "has a period of time equal to that of the original statute of limitations in which to serve the writ or complaint." <u>Forcine v. O'Connor</u>, 23 Pa. D. & C.4th 446, 447 (Pa. Ct. Cm. Pls. 1995). More recently, however, Pennsylvania courts (including the court in <u>Forcine</u>, which Plaintiff cites), have ceased use of this doctrine. <u>See, e.g.</u>, <u>Witherspoon v. City of Philadelphia</u>, 768 A.2d 1079, 1083-84 (Pa. 2001) ("At this juncture, it becomes appropriate to reassess the wisdom of the 'equivalent period' doctrine. In light of the changes in practice and in application of the rules . . ., we fail to see any justification for the continuation of this common law doctrine in present circumstances. The notion that an action can be 'kept alive' for the same period of time as the applicable limitations period although the defendant has not been made aware of the action, is inherently inconsistent with the requirement that the plaintiff make a good faith attempt to notify the defendant of the action. It is also contrary to the policy underlying limitations periods as a whole . . . ."). In its place, the courts imposed a "good faith" requirement, as discussed more fully below.

664, 671 (Pa. 2005) (noting that "the plain language of [Rule 401(b)] allows a plaintiff to commence an action, thereby satisfying the statute of limitations, and yet to delay the provision of notice of the claim to the defendant interminably, thus undermining the purpose of the statute of limitations"). For this reason, court have devised the rule that "[o]nce an action is commenced by writ of summons or complaint the statute of limitations is tolled only if the plaintiff then makes a good faith effort to effectuate service." Englert v. Fazio Mech. Servs., Inc., 932 A.2d 122, 124 (Pa. Super. Ct. 2007).[8]

---

[8]     Similarly, Plaintiff's argument that the local rules save her claims also fails. Those rules state, in relevant part, that "[i]f a complaint has not been filed or served by the date of the scheduled hearing, the case will be assigned to an arbitration panel with instructions to enter an award in favor of the defendant, unless counsel has complied with Phila. Civ. R. *1303(b)(5)(i) and obtained a relisting prior to the Arbitration Hearing date." Phila. Cty. Local R. *1303(j). Plaintiff contends that this rule allowed her to reissue and serve the Writ any time before the date of the scheduled arbitration hearing (which was originally February 22, 2016).

        Plaintiff reads Local Rule *1303(j) far too expansively. The rule, quite plainly, does not speak to service deadlines. Rather, it simply addresses the situation, for the benefit of the arbitration process, when a complaint has not been served before an arbitration hearing is set to take place. Indeed, Local Rule *1303 is entitled "Scheduling of Arbitration Hearings[,] Relistings[,] Consolidations." The necessity of this rule is made clear by the docket in this case, which reveals that an arbitration date was set only four days after Plaintiff filed her Writ, even though she had not yet served Defendants. Wexford & Famiglio Mot. Dismiss Ex. B at 4, ECF No. 5-4. Clearly, arbitration cannot occur if the defendants have not even been served with the complaint – yet, if arbitration hearings are scheduled upon filing and not upon service, it is

Again, Plaintiff's filing and service of the Complaint

(on January 27, 2016, and February 12, 2016, respectively) fell

outside even the most generous construction of the statutory

then inevitable that, in some situations, plaintiffs will fail
to effect service by the time the scheduled arbitration date
comes around. This local rule apparently seeks to provide a
solution for that problem.

Moreover, the rule does not say anything the
Pennsylvania Rules of Civil Procedure do not already say about
the timeline for service – indeed, Local Rule *1303(j) is
entirely consistent with the Pennsylvania rules. Under
Pennsylvania Rule 401(b)(2) and (5), a plaintiff may continue to
reissue a writ until she finally serves it. It is thus
conceivable that a plaintiff, in full compliance with both the
local rules and the Pennsylvania rules, might file a complaint
in arbitration court, then reinstate the complaint every 30 days
until finally serving it shortly before the arbitration hearing
is scheduled to occur. In that sense, it is true that Plaintiff
had until the arbitration hearing to file and serve her
Complaint.

But the timeliness of a complaint with respect to an
arbitration hearing is distinct from the timeliness of a
complaint with respect to a statute of limitations. Critically,
neither the local rule nor the Pennsylvania rules state that
service, whenever it occurs, retroactively tolls the statute of
limitations as of the very first filing of the writ. To the
contrary, service (or a good faith attempt at service) tolls the
statute as of the date the writ was <u>reissued</u>. If the writ is
reissued after the statutory period, the claims do not survive
the statute of limitations. As discussed in this memorandum,
Pennsylvania case law makes this requirement clear. <u>See, e.g.</u>,
<u>Witherspoon</u>, 768 A.2d at 1080-84. And if Local Rule *1303(j)
said otherwise – which it does not – it would be invalid as
inconsistent with the Pennsylvania Rules of Civil Procedure. <u>See</u>
<u>Davies v. Se. Pa. Transp. Auth.</u>, 865 A.2d 290, 293-94 (Pa.
Cmwlth. Ct. 2005).

In summary, this local rule does <u>not</u> stand for the
proposition that a plaintiff survives a statute of limitations
so long as she serves her complaint before her scheduled
arbitration hearing. Accordingly, Local Rule *1303(j) has no
impact on the Court's analysis.

period, which ended on December 22, 2015. Had Plaintiff filed
her Complaint – which, under Rule 401(b)(5), served as a
reissuance of the Writ – before the running of the statute of
limitations, and served it within thirty days, her claims would
survive, even though she had never served the Writ. But as is,
her claims can survive only if she made a good faith effort to
effectuate service <u>before</u> the statutory period ran. <u>See
Witherspoon v. City of Philadelphia</u>, 768 A.2d 1079, 1080-84 (Pa.
2001) (holding that claims were time-barred where the plaintiff
filed a writ in time and made only one failed attempt to serve
it, then did not reissue and properly serve the writ until the
statutory period had run); <u>Trivitt v. Serfass</u>, No. 1596 MDA
2014, 2015 WL 6684623, at *4-9 (Pa. Super. Ct. Aug. 21, 2015)
(holding that claims were time-barred where the plaintiffs filed
a complaint and failed to make good faith efforts to serve it
before the statute of limitations ran out, then reinstated it
and effected service <u>after</u> the statute of limitations ran out).
Here, on May 22, 2015, the same day she filed the Writ,
Plaintiff faxed and mailed the Writ to SCI-Muncy. The issue,
then, is whether those efforts were in "good faith."

The question of "[w]hat constitutes a 'good faith'
effort to serve legal process is a matter to be assessed on a
case by case basis." <u>Englert</u>, 932 A.2d at 124 (quoting Moses v.
T.N.T. Red Star Express, 725 A.2d 792, 796 (Pa. Super. Ct.

1999). The decision is "in the sound discretion of the trial court." McCreesh, 888 A.2d at 672. "It is the plaintiff's burden to demonstrate that his efforts were reasonable." Bigansky v. Thomas Jefferson Univ. Hosp., 658 A.2d 423, 433 (Pa. Super. Ct. 1995). Pennsylvania courts have noted that "[s]imple neglect and mistake to fulfill the responsibility to see that requirements for service are carried out may be sufficient" to find that a plaintiff did not act with good faith. Englert, 932 A.2d at 124 (quoting Devine v. Hutt, 863 A.2d 1160, 1168 (Pa. Super. Ct. 2004)). Moreover, "conduct that is unintentional that works to delay the defendant's notice of the action may constitute a lack of good faith on the part of the plaintiff." Id. at 124-25 (quoting Devine, 863 A.2d at 1168). In other words, there may be a lack of good faith "even where the plaintiff did not intentionally delay notifying the defendant of the institution of the lawsuit." Witherspoon, 768 A.2d at 1081.

        In this case, while it is true that Plaintiff did not do nothing, she did not do much, and several considerations weigh against a finding of good faith.

        First, Pennsylvania requires personal service – that is, "handing a copy to the defendant" or to another authorized adult, Pa. R. Civ. P. 402(a) – and does not authorize service by

15

fax or mail,[9] unless defendants fill out a separate document
accepting service. Id. 402(b). Therefore, while Plaintiff might
have attempted to provide notice of the Writ through her fax and
mailing, Pennsylvania law would not have permitted actual
service through those documents. And while it is true that
attempts to provide notice may support a finding of good faith
if there is evidence that notice was actually received, see
McCreesh, 888 A.2d at 674 ("Neither our cases nor our rules
contemplate punishing a plaintiff for technical missteps where
he has satisfied the purpose of the statute of limitations by
supplying a defendant with actual notice."), there is no
evidence here that any of the defendants did receive, or even
could have received, actual notice through the fax or mailing.

Plaintiff submitted her fax and mailing as exhibits.[10]

---

[9]     Plaintiff's argument that she needed to rely on fax
and mail because she could not personally serve Defendants
inside the prison is unavailing in light of the facts that (1)
each defendant could have been served at a location other than
the prison and (2) Plaintiff found a way to properly serve the
same defendants the following February, when she filed and
served the Complaint.

[10]     Ordinarily, when deciding a motion to dismiss, a
district court considers "only the allegations contained in the
complaint, exhibits attached to the complaint and matters of
public record." Pension Benefit Guar. Corp., 998 F.2d at 1196.
However, an exception is made for extrinsic documents upon which
the plaintiff's claims are based, because the plaintiff then
"has actual notice . . . and has relied upon these documents in
framing the complaint." Schmidt, 770 F.3d at 249 (quoting In re
Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d
Cir. 1997)).

Pl.'s Mem. Law Opp'n Exs. C, D, ECF No. 22-2. The fax has no
apparent cover letter and she does not identify who the sole
recipient fax number belonged to; there is no way to know who,
if anyone, actually received the Writ that she faxed. The
mailing is no more effective. It begins with a brief letter
addressed to "Wexford Health Sources, Inc.," c/o SCI-Muncy, and
apparently was mailed to the SCI-Muncy Medical Staff Office. The
letter states, in full: "Dear Defendant: You and your employees
have been sued. Enclosed is a copy of the Writ of Summons in the
above-referenced matter. We have included a waiver of service of
process. Please sign and return this waiver. Thank you for your
prompt reply to this request. Sincerely, Geoffrey V. Seay,
Esquire." Id. Again, there is no way to know who received and/or
saw this letter. Indeed, it is fairly likely that Wexford and
Famiglio, at least, did not receive notice through either the
fax or the letter, as Famiglio stopped working at SCI-Muncy in
2013, and Wexford's contract with the Commonwealth ended in

---

        Here, the fax and mailing are extrinsic documents,
without which Plaintiff's claims cannot survive. As explained
above, Plaintiff's Complaint is untimely on its face and becomes
timely only with evidence that Plaintiff made good faith efforts
to serve her original writ on Defendants. Plaintiff presents the
fax and mailing as evidence of good faith, so her claims are
thus based on those documents and the Court will consider them
at this stage.

2014.[11] Wexford & Famiglio Br. 7, ECF No. 19-1; Wexford &
Famiglio Reply Br. 3, ECF No. 31-3. There is also no reason to
believe that either Fisher or the Commonwealth were aware of
this fax or letter.

Second, Plaintiff apparently assumed that one
defendant would receive the fax and mailing and then somehow
inform the other defendants that they were all being sued. She
directed no documents individually to Famiglio, Fisher, or a
representative of the Commonwealth.[12] Plaintiff's reliance on
that assumption falls short of a good faith effort at providing
notice to each defendant, much less a good faith effort at
effecting service.

Finally, it appears that Plaintiff never followed up
to ensure that Defendants received notice through the fax and/or
mailing, much less that they were actually served – even though
roughly seven months passed before Plaintiff filed the
Complaint, and at no time during that period did Plaintiff

---

[11]      Plaintiff does not dispute these facts – but even if
she did, Wexford and Famiglio's mere presence at SCI-Muncy would
still not be evidence that they actually received the fax or
mailing.

[12]      Indeed, the mailing, on its face, purports to provide
notice only to Wexford and its employees. While Plaintiff does
allege that Famiglio is a Wexford employee, she alleges that
Fisher is a Commonwealth employee, not a Wexford employee.
Corrected First Am. Compl. ¶¶ 5, 7, 38. And the Commonwealth is
quite obviously not a Wexford employee.

receive any indication that Defendants had been served or had received notice. Cf., e.g., Voicheck v. Ford Motor Co., No. 12-6534, 2013 WL 1844273, at *3 (E.D. Pa. May 2, 2013) (applying Pennsylvania law and finding no good faith where the plaintiff was informed by the sheriff that the defendant's address was incorrect, then made no further attempts at service over a period of nine months); Witherspoon, 768 A.2d at 1080-84 (finding no good faith where the plaintiff made only one attempt to serve the defendant in a period of nine months).

For these reasons, the Court finds that Plaintiff did not make a good faith effort to serve Defendants before the statute of limitations ran out. Accordingly, Plaintiff's claims, when properly filed and served months later, were time-barred. The Court will thus grant the motions to dismiss and dismiss Plaintiff's claims in full.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant all three motions to dismiss and dismiss all of Plaintiff's claims. An appropriate order follows.